UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    <u>For Online Publication Only</u>
------------------------------------------------------------------X
DARYL HOLLEY,

                    Petitioner,

           -against-                                **<u>MEMORANDUM AND ORDER</u>**
                                    16-CV-215 (JMA)
D. UHLER,
Superintendent, Upstate Correctional Facility,

                    Respondent.

**FILED**
**CLERK**

8/1/2018 4:25 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**
------------------------------------------------------------------X
**APPEARANCES:**

Daryl Holley, <u>pro se</u>
      *For Petitioner*

Cristin Connell and Matthew Frankel, Assistant District Attorneys
Alyson Gill, Assistant Attorney General
Madeline Singas, District Attorney of Nassau County
262 Old Country Road
Mineola, NY 11501
      *For Respondent*

**AZRACK, United States District Judge:**

        Daryl Holley ("Petitioner"), proceeding <u>pro se</u>, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254.    After a jury trial in New York state court, Petitioner was convicted of three counts of third-degree criminal sale of a controlled substance, three counts of third-degree criminal possession of a controlled substance, and two counts of second-degree criminal use of drug paraphernalia.  (Petition ("Pet.") ¶ 4.)  He is presently incarcerated and serving a determinate term of eighteen years.  (Pet. ¶ 9.)

        Petitioner asserts fifteen grounds for habeas relief in his petition, some of which are duplicative and/or are not appropriate grounds for relief:

(1) the admission into evidence, over the defense's objection, of un-redacted video tapes deprived petitioner of his due process right to a fair trial;

(2) the trial court's sentence violated the Sixth, Eighth and Fourteenth Amendments;

(3) the trial court's allegedly excessive sentencing;

(4) lack of probable cause for arrest and the trial court's denial of a pre-trial evidentiary Darden hearing;

(5) the admission into evidence of certain audio/video tapes containing "inaudible and unintelligible visual gaps of the alleged drug transactions";

(6) ineffective assistance of counsel on the basis that counsel failed to assert an agency defense and request that the Court instruct the jury accordingly;

(7) the trial court's failure to excuse a juror who expressed reservations about continuing to serve;

(8) ineffective assistance of counsel relating to certain jury instructions;

(9) the lower court granted Petitioner's application for assigned counsel in pursuing his second §440 motion;

(10) the discovery of new evidence requires a new trial;

(11) the prosecution's failure to disclose certain problems at the Nassau County Forensic Evidence Bureau ("FEB") around the time of trial;

(12) actual innocence;

(13) there was insufficient evidence for conviction at trial based on newly discovered evidence;

(14) the Respondent has not explained the change in color and consistency of the retested cocaine; and

(15) actual innocence because there is no evidence linking Petitioner to the crime.

## I.    BACKGROUND

### A.  **The Trial and Conviction**

At trial, the evidence showed that Petitioner was observed and recorded on video selling cocaine to three different confidential informants on three separate dates. The following evidence was presented: On October 12, 2006, Carolyn Newtown, a confidential informant, who had worked with the Glen Cove Police Department on numerous occasions, purchased cocaine from Petitioner.

2

(Trial Tr. 211-214; 249-251.)  Ms. Newtown, who at the time of trial had known Petitioner for over twenty years, testified that Petitioner sold her forty dollars' worth of what she believed to be cocaine in a plastic bag.  (Trial Tr. 249-251.)  Detective Christopher Grella testified that Ms. Newton was equipped with an audio and video recording device when she purchased the alleged cocaine from Petitioner and that he monitored the transaction from his vehicle nearby.  (Trial Tr. 215.)  He also testified that he searched Ms. Newton immediately after the transaction and recovered a Ziploc bag containing the substance Mrs. Newtown purchased from Petitioner.  (Trial Tr. 221.)  Detective Grella testified that he reviewed the video recording after the transaction and that it clearly depicted Petitioner providing the informant with what appeared to be cocaine in exchange for forty dollars.  (Trial Tr. 220.)  The video recording of the transaction between Petitioner and Ms. Newtown was played for the jury and a transcript of the audio on the tape was published to the jury.  (Trial Tr. 255-256.)

On March 23, 2007 and April 4, 2007, Steven Klink, another confidential informant, purchased cocaine from Petitioner.  Mr. Klink testified that, on both dates he was wearing a hidden recording device attached to his shirt button when he told Petitioner that he wanted to buy cocaine and subsequently purchased forty dollars' worth of cocaine.  (Trial Tr. 275, 277, 284, 300-301.)  The video recording of both transactions between Petitioner and Mr. Klink was played for the jury and a transcript of the audio on the tape was published to the jury.  (Trial Tr. 283-284, 306-307.)  Detective Robert Schlee testified that he monitored Mr. Klink's transactions with Petitioner via the hidden recording device on each of these occasions.  (Trial Tr. 323-324, 329.)  Detective Schlee also testified that on both March 23, 2007 and April 4, 2007, he searched Mr. Klink immediately after his transaction with Petitioner and recovered an orange-tinted Ziploc back containing a white substance on each occasion.  (Trial Tr. 325-326, 330.)

3

On April 20, 2007, detectives from the Glen Cove Police Department executed a search warrant on Petitioner's apartment, (Trial Tr. 379), and recovered a scale used to weigh drugs, (Trial Tr. 382), two silver metal spoons with some sort of residue on them, (Trial Tr. 386), a straw (Trial Tr. 382), and approximately 100-200 very small Ziploc bags, typically used by drug dealers to portion out drug quantities for sale, (Trial Tr. 383).

Prior to trial, the substances from each of the three sales were tested by the FEB on November 8, 2006, April 3, 2007, and April 9, 2007, respectively. (See Connell Aff. in Supp. of Resp.'s Mot. to Dismiss ("Connell Aff. I") ¶ 5, ECF No. 6.) The tests indicated that the substance recovered in each of the three sales was cocaine.[1]  (Id.)  The items seized from Petitioner's apartment were tested by the FEB on October 4, 2007, and test results confirmed that each contained cocaine residue. (Id.)

At trial, the parties stipulated that the substances recovered by the police from Ms. Newton and Mr. Klink after their transactions with Petitioner tested positive as cocaine and that the spoons recovered from the search of Petitioner's apartment on April 20, 2007 tested positive for cocaine residue. (Trial Tr. 399-400.)

**B. Nassau County Forensic Evidence Bureau**

The FEB was part of the Nassau County Police Department. (Ex. 3 of Resp.'s Opp. to Pet.'s Second 440.10 Motion ("FEB Report") at 3.)  On December 3, 2010, the FEB was placed on probation by the American Society of Crime Laboratory/Laboratory Accreditation Board ("ASCLD/LAB") based on an inspection that the ASCLD/LAB conducted in November 2010.

---

[1] The FEB reports recorded the weight of each substance tested as follows: 0.026 ounces cocaine, 0.031 ounces cocaine, and 0.020 ounces cocaine. (See Exhibits 10-13 of the People's Opp. to Pet.'s Second 440.10 Mot., ECF No. 27-22.)  When converting these amounts from ounces to grams, the substances weigh .74 grams, .88 grams and .57 grams respectively.

(Id. at 8.)  Such inspections are required by the New York State Commission on Forensic Science. (Id.)

The FEB's placement on probation became public on December 7, 2010. (Id. at 134.)  In February 2011, Nassau County officials decided to close the entire FEB. (Id. at 10.)  As more information about the FEB came to light, it was revealed that the ASCLD/LAB had previously criticized the FEB in prior inspections and had, in fact, placed the FEB on probation in 2006.  The New York State Inspector General launched an investigation into the FEB and, on November 10, 2011, released a report about the FEB's history of problems and interactions with the ASCLD/LAB, and the failed oversight of the FEB by Nassau County and the State.  (See generally, id.)

When the ASCLD/LAB inspects a laboratory, it examines whether the laboratory meets three different categories of standards: Essential criteria; Important criteria; and Desirable criteria. (Id. at 25.)  In the fall of 2005, the ASCLD/LAB inspected the FEB and issued a report finding noncompliance in twenty-eight out of 145 criteria, eighteen of which were deemed to be Essential. (Aff. of Monica Leiter in Supp. of Resp.'s Opp. to Pet.'s Second 440.10 Mot. ("Leiter Aff.") ¶ 9.) Eight of the noncompliant essential criteria pertained to controlled substances.  (Id.)

When the FEB was re-inspected in July 2006—approximately four months before the substance from the transaction between Petitioner and Ms. Newtown was tested—the inspection found compliance with all Essential criteria.  (Id. ¶ 12.)  Nevertheless, on August 14, 2006, the ASCLD/LAB placed the FEB on probation due to the problems identified in the 2005 inspection report. (Id.)  While on probation, the FEB remained an accredited lab. (Id.)

In April 2007, a few days after the substances from the transactions between Petitioner and Mr. Klink were tested, the ASCLD/LAB re-inspected the FEB and determined that it was fully compliant.  (Id. ¶ 13.)  The FEB's probation was lifted shortly thereafter on May 17, 2007.  (Id.)

In October 2007, the month when Petitioner's drug paraphernalia was tested, the ASCLD/LAB conducted another inspection and determined that the FEB was noncompliant in eight Essential criteria.  (Id. ¶ 14.)  Three of the eight noncompliant criteria concerned the controlled substances discipline.  (Id.)

In May 2008, the ASCLD/LAB found that the FEB was once again fully compliant with all applicable essential criteria.  (Id. ¶ 15.) In February 2009, the ASCLD/LAB inspected the FEB again and found it fully compliant with applicable essential and desirable criteria.  (Id.)

In early November 2010, the FEB was re-inspected by the ASCLD/LAB, which cited the FEB for fifteen Essential noncompliances.  (Id.)  On December 3, 2010, the FEB was placed on probation again and on February 18, 2011, Nassau County closed the FEB.  (Id.)

On March 22, 2011, the District Attorney's Office notified Petitioner via letter about the problems at FEB and explained that all of the evidence from felony drug cases between 2008 and 2010 would be retested.  (Pet.'s Reply, Ex. C.)  The District Attorney's Office also provided Petitioner with contact information for the Nassau County Bar Association and the Nassau County Legal Aid Society.  (Id.)

## C.  The Retest by NMS Labs

In June 2011, the three bags allegedly containing controlled substances as well as the drug paraphernalia were retested by NMS Labs, a private accredited laboratory.  The retesting confirmed that the substances contained in the bags were in fact cocaine and that each of the drug paraphernalia items contained cocaine residue.  (See Exhibits 10-13 of the People's Opp. to Pet.'s

6

Second 440.10 Mot. (the "NMS Retest Reports"), ECF No. 27-22.) The NMS Retest Reports describe "Item #1" as "approximately .72 grams of white solid material," "Item #2" as "approximately .76 grams of yellow solid material," and "Item # 3" as "approximately .48 grams of off-white solid material." (Id.) Each report includes a certification by a forensic chemist, which states, "NMS Labs, Inc. has taken custody of the evidentiary material on 5/05/11 and that all Chain of Custody documents and specimen integrity seals were in order." (Id.) The NMS Retest Reports also confirm that "[t]he chain of custody documentation is on file at NMS Labs, Inc." and that "[f]alse statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the New York State penal law." (Id.)

**D. Post-Conviction Proceedings**

**1. The Direct Appeal**

On May 29, 2009, Petitioner, through counsel, appealed his conviction to the Appellate Division, Second Department. (See ECF No. 27-1.) On appeal, Petitioner claimed that: (1) the sentence imposed was excessive; and (2) the court erred by admitting unredacted videotaped statements into evidence. (Id.) In a pro se supplemental brief, Petitioner further claimed that his trial attorney was ineffective for failing to present an agency defense. (See ECF No. 27-3.) On August 9, 2011, the Second Department modified Petitioner's sentence by reducing his sentence by a total of four years. See People v. Holley, 87 A.D.3d 601 (N.Y. App. Div. 2d Dep't 2011). Petitioner's judgment of conviction, as modified, was confirmed. See id.

Petitioner sought leave to appeal to the New York State Court of Appeals, but his application was denied on November 22, 2011. See People v. Holley, 17 N.Y.3d 953 (N.Y. 2011). Petitioner did not file a petition for certiorari in the United States Supreme Court.

7

### 2.  Petitioner's First Motion to Vacate

On December 17, 2009, before the Second Department ruled on his direct appeal, Petitioner filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10(1)(g), or in the alternative pursuant to CPL § 440.30(5), for a fact-finding hearing.  In this motion, Petitioner alleged that trial counsel was ineffective for, inter alia, failing to present an agency defense, not challenging specific jurors, and allowing jurors to view the videotaped drug transactions in the jury room during deliberations.  (See Pet.'s First 440.10 Mot., ECF Nos. 27-10-13.)  The District Attorney's Office opposed the motion and on April 27, 2010, Justice David Ayres, of the Supreme Court of Nassau County, denied Petitioner's claim on the basis that his judgment of conviction was currently pending on appeal and that sufficient facts appeared in the record with respect to each of Petitioner's arguments to permit adequate review of those issues on appeal.  (Order Denying Pet.'s First 440.10 Mot., ECF No. 27-15.)

### 3.  Petitioner's Motion for Appointment of Counsel

On November 30, 2011, Petitioner filed a motion for the appointment of pro bono counsel for the purpose of evaluating his case to determine whether valid legal arguments existed as a basis for filing a § 440 motion related to the FEB's noncompliance.  (Order Granting Pet.'s Mot. for Counsel, Ex. G to Pet.'s Reply, ECF No. 32.)  On February 24, 2012, the District Attorney's Office filed an opposition to Petitioner's motion that included the NMS Retest Report for the paraphernalia only.  On June 29, 2012, Justice Ayres granted Petitioner's motion and appointed counsel "for the limited and specific purpose" of determining whether valid legal arguments existed as a basis for filing a § 440 motion related to the FEB's noncompliance.  (Id. at 4.)

### 4. Petitioner's Second Motion to Vacate

On February 4, 2013, Petitioner filed a second motion to vacate on the grounds that the FEB's noncompliance with the accrediting agency's testing procedures constituted new evidence that would change the result of a new trial. Because Petitioner was only in possession of the paraphernalia retest reports at the time he filed the initial motion, he also argued that the District Attorney's failure to have the three bags allegedly containing controlled substances retested would necessarily prevent his conviction for possession of cocaine at a new trial. (See Pet.'s Second 440.10 Mot., ECF No. 27-21.) Petitioner requested, in the alternative, that a hearing be held, but did not explain what type of hearing should be held or why a hearing was necessary. (Id.) The District Attorney's Office opposed the motion and submitted to the court all of the NMS Retest Reports, which confirmed that the three bags were retested on the same day as the paraphernalia and that each contained cocaine. (See NMS Retest Reports.)[2] On April 16, 2013, Petitioner submitted a pro se reply addressing the NMS Retest Reports for the three bags. (See ECF No. 27-24.) In his reply, Petitioner appears to argue that the retest results—which confirmed that the three bags and paraphernalia contained cocaine or cocaine residue—are irrelevant because the initial test results are called into doubt by the issues discovered about the FEB and the District Attorney's Office's intentional withholding of the retest results for the three bags. On July 5, 2013, Justice Ayres denied Petitioner's claims on the merits. (See ECF No. 27-25.) In his decision, Justice Ayres explained that because the retesting done by NMS Labs confirmed that the substances Petitioner possessed were cocaine, Petitioner had not established a reasonable probability that had he possessed information about the FEB at trial, the verdict would have been more favorable to

---

[2] The District Attorney's Office's opposition stated that the failure to include the retest reports for the three bags in the response to Petitioner's motion for counsel was unintentional and simply an oversight. (See Resp.'s Opp. to Pet.'s Second 440.10 Mot. at 2 n. 2, ECF No. 27-22.)

him.  (Id.)  Petitioner moved for leave to appeal from the denial of his motion to vacate, which was

denied on December 5, 2013.  (See ECF No. 27-30.)  Petitioner subsequently moved to reargue

the motion for leave to appeal, which was denied on July 22, 2014.  (See ECF No. 27-31.)

### 5.  Petitioner's Third Motion to Vacate

On August 5, 2014, Petitioner filed, pro se, a third motion to vacate his judgment of

conviction on the grounds that there were discrepancies between the physical descriptions of the

drugs given during trial testimony and in the NMS Retest Reports.  (See ECF No. 27-35.)  He

argued that the alleged discrepancies constituted "newly discovered evidence" that demonstrated

his actual innocence and in the alternative, that this new evidence warranted a new trial.  (Id.)

Petitioner also argued that his judgment of conviction should be vacated because the District

Attorney's Office failed to prove, beyond a reasonable doubt, that the substance he sold to the

confidential informants was cocaine.  (Id.)  Petitioner also requested, in the alternative, that the

court hold an evidentiary hearing to "determine whether such judgment should be vacated upon

the ground(s) of false evidence, newly discovered evidence, actual innocence and that the

judgment was obtained in violation of the defendant's rights under the U.S. Constitution, 14th

Amendment."  (Id. at 1.)  Petitioner did not elaborate as to why a hearing was needed except to

state in his reply brief that the court should conduct an evidentiary hearing "so that the record can

be expanded and the court can explore the underlying circumstances surrounding the clams stated

herein."  (Pet.'s Reply in Support of Second 440.10 Mot. at 7, ECF No. 27-24.)  The District

Attorney's Office opposed the motion.  On January 8, 2015, Justice David P. Sullivan, of the

Supreme Court of Nassau County, denied Petitioner's claim on three separate grounds: (1)

Petitioner's claim was procedurally barred since it should have been raised in Petitioner's earlier

§ 440 motion; (2) Petitioner's claim was meritless and not supported by any evidence; and (3)

Petitioner's claim was frivolous. (See ECF No. 27-39.) Petitioner moved for leave to appeal from the denial of his motion to vacate, which was denied on August 10, 2015. (See ECF No. 27-51.) Petitioner subsequently sought leave to appeal to the Court of Appeals, which dismissed the application on December 4, 2015, on the grounds that the Appellate Division's decision was not an appealable order. (See ECF No. 27-54.)

### 6. The Instant Petition

On January 6, 2016,[3] Petitioner filed the instant petition for habeas relief. He asserts the following grounds for relief:

(1) the admission into evidence, over the defense's objection, of un-redacted video tapes deprived petitioner of his due process right to a fair trial;

(2) the trial court's sentence violated the Sixth, Eighth and Fourteenth Amendments;

(3) the trial court's allegedly excessive sentencing;

(4) lack of probable cause for arrest and the trial court's denial of a pre-trial evidentiary hearing;

(5) the admission into evidence of certain audio/video tapes containing "inaudible and unintelligible visual gaps of the alleged drug transactions";

(6) ineffective assistance of counsel on the basis that counsel failed to assert the agency defense and request that the Court instruct the jury accordingly;

(7) the trial court's failure to excuse a juror who expressed reservations about continuing to serve;

(8) ineffective assistance of counsel relating to certain jury instructions;

(9) the lower court granted Petitioner's application for assigned counsel in pursuing his second §440 motion;

(10) the discovery of new evidence requires a new trial;

---

[3] "Under federal procedural law, a federal habeas petition is deemed 'properly filed' when the prisoner delivers the petition to a prison official for mailing." Fernandez v. Artuz, 175 F. Supp. 2d 682, 684 (S.D.N.Y. 2001), aff'd, 402 F.3d 111 (2d Cir. 2005) (quoting Noble v. Kelly, 246 F.3d 93, 97–98 (2d Cir. 2001)).

(11) the prosecution's failure to disclose certain problems at the Nassau County FEB around the time of trial;

(12) actual innocence;

(13) there was insufficient evidence for conviction at trial based on newly discovered evidence;

(14) the Respondent has not explained the change in color and consistency of the retested cocaine; and

(15) actual innocence because there is no evidence linking Petitioner to the crime.

On April 4, 2016, Respondent filed its motion to dismiss the petition.  (Resp.'s Mot. to Dismiss ("MTD"), ECF No. 6.)  On May 16, 2016, Petitioner filed an opposition to Respondent's motion.  (Petitioner's Opposition ("Pet.'s Opp."), ECF No. 8.)  On April 4, 2018, the Court issued an Order directing Respondent to file all documents constituting the state court record as well as a response regarding the timeliness of Petitioner's claims numbered 10-15 in the Petition and the merits of those claims.  On May 9, 2018, Respondent filed its supplemental memorandum of law in support of its motion to dismiss the Petition.  (Resp.'s Supp. Memo of Law in Supp. of the Mot. to Dismiss ("Resp.'s Supp. Mem."), ECF No. 27.)   On June 7, 2018, Petitioner filed his supplemental reply.  (Pet.'s Supp. Reply, ECF No. 32.)

## II.    DISCUSSION

### A.  <u>Standards of Review</u>

#### 1.  Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."   <u>Williams v. Taylor</u>, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  First, the petition must be timely.  Next, the petitioner must satisfy three

hurdles: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the

satisfaction of AEDPA's deferential review of state court decisions.  See 28 U.S.C. § 2254.

### 2.  Limitations Period

AEDPA provides a one-year statute of limitations for the filing of a habeas petition by a

person in custody pursuant to a state court judgment.  See 28 U.S.C. § 2244(d)(1).  The limitations

period runs from the latest of four triggering dates, including "the date on which the judgment

became final by the conclusion of direct review or the expiration of the time for seeking such

review," or "the date on which the factual predicate of the claim or claims presented could have

been discovered through the exercise of due diligence."  §§ 2244(d)(1)(A), (D).

The limitations period is tolled while a "properly filed application for State post-conviction

or other collateral review with respect to the pertinent judgment or claim is pending."

§ 2244(d)(2); Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000).  "If the Appellate Division denies

leave to appeal, and the petitioner seeks permission to appeal to the New York Court of Appeals,

the time during which the latter leave application is pending is not tolled, because the second leave

application is not 'properly filed.'"  Clark v. McKinney, No. 05-CV-5585, 2007 WL 2126273, at

*4 (E.D.N.Y. July 24, 2007).  "[A] state-court petition is 'pending' from the time it is first filed

until finally disposed of and further appellate review is unavailable under the particular state's

procedures."  Artuz v. Bennett, 199 F.3d 116, 120 (2d Cir. 1999).

### 3.  Exhaustion

Generally, a court cannot review a habeas petition unless the petitioner "has exhausted the

remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is

designed to provide state courts with the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Therefore, the petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered. Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 190 n. 3 (2d Cir. 1982) (en banc). Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)). Even if a claim is not properly exhausted, the Court can deny the claim if it is clearly meritless. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Ortiz v. Marshall, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009) ("Federal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous.").

### 4. Procedural Default

A federal court will not review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). When a state court has dismissed a claim on such a procedural ground, the petitioner is

procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions explained below.

This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).

A petitioner may overcome a procedural bar by demonstrating either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). For example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." (Id.) (internal quotation marks and citations omitted).

Even if a petitioner cannot establish cause and prejudice, a federal court may also excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result: in other words, "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

### 5.  AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412–13 (O'Connor, J., concurring).  A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  Id. at 413.  This standard does not require that all reasonable jurists agree that the state court was wrong.  Id. at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)).  This standard is "difficult to meet."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish

v. Lancaster, 569 U.S. 351, 357-358 (2013).  A petition must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006).  A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding."  Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).  Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  Williams, 529 U.S. at 389.

### 6.  Pro Se Status

Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).  Nevertheless, in light of his pro se status, the Court will construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  However, Petitioner is not excused "from compliance with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (internal quotation marks omitted)).

### B. **Application**

#### 1. **Petitioner's Claims 1-9**

A prisoner's judgment of conviction becomes final for habeas purposes either when the United States Supreme Court denies the prisoner's petition for a writ of certiorari or when the time for seeking such a writ has expired, which is 90 days. Artuz, 237 F.3d at 147. The New York Court of Appeals denied Petitioner's request for leave to appeal the Appellate Division's decision on November 22, 2011. People v. Holley, 17 N.Y.3d 953 (N.Y. 2011). Thus, Petitioner's judgment of conviction became final on February 20, 2012 and the one-year limitations period began to run at that time. Even when accounting for statutory tolling while Petitioner's second and third § 440 motions were pending, Petitioner has still exceeded the limitations period by more than 140 days. Indeed, Petitioner concedes that absent equitable tolling, these claims are untimely. (See Pet.'s Reply 10-11.) However, Petitioner argues that his Petition is timely in light of the "newly discovered" evidence regarding the FEB and subsequent retesting of the drugs by NMS Labs. (Pet.'s Reply 12, 16.) Nevertheless, Petitioner's claims 1-8[4] have nothing to do with newly discovered evidence and instead pertain to the admission of certain evidence at trial, whether probable cause existed to arrest Petitioner and issue a search warrant, counsel's strategy at trial, and Petitioner's sentencing. Thus, the factual predicates for these claims arose well before the limitations period expired and therefore they are untimely. See Rivas v. Fischer, 687 F.3d 514, 537 (2d Cir. 2012) (holding that the factual predicates for petitioner's claims for ineffective assistance arose before the limitations period expired, making them untimely.)

---

[4] Petitioner's claim number 9 merely states that Petitioner was appointed counsel for the purpose of determining whether he had a viable § 440 claim. This is not a cognizable claim on habeas review and is therefore dismissed.

To the extent that Petitioner argues that tolling of the limitations period is warranted because the newly discovered evidence supports his claim of actual innocence, this argument fails because Petitioner is unable to demonstrate that it is "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt," Rivas, 687 F.3d at 41 (quoting House, 547 U.S. at 538). (See Part 2(i), infra.) Accordingly, Petitioner's claims numbered 1-9 are dismissed.

**2. Petitioner's Claims 10-15**

Although Petitioner numbers his remaining claims 10-15, in reality, he only describes two grounds for habeas relief: (1) a Brady claim; and (2) an actual innocence claim. The Court is skeptical of Petitioner's argument that these claims are timely.[5] However, the Court need not address the timeliness of these claims because Petitioner's actual innocence claim is procedurally barred and in any event, both claims fail on the merits.

*i.    Petitioner's Brady Claim*

Under Brady v. Maryland, 373 U.S. 83 (1963), "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." United States v. Cacace, 796 F.3d 176, 183 (2d Cir. 2015) (quoting United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001)). Evidence is material if it "'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Coppa, 267 F.3d at 140 (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)). "Accordingly, even when the government fails to disclose favorable information to the defense, a

---

[5] To the extent that petitioner relies on the re-testing of the samples in asserting a Brady claim, the re-testing is not, itself, Brady material because that information was not known to the prosecution at the time of Petitioner's trial. Accordingly, it is not clear that Petitioner's Brady claims are timely given that Petitioner first learned of broader problems with the FEB in March 2011. However, it is unnecessary to address the complicated question of whether Petitioner's Brady claim is timely and whether plaintiff would receive the benefit of equitable tolling because as discussed infra, Petitioner's Brady claim fails on the merits.

Brady violation still requires a reasonable probability that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed." Cacace, 796 F.3d at 183-84 (quoting United States v. Rodriguez, 496 F.3d 221, 227 (2d Cir. 2007)) (internal quotation marks omitted). A "'reasonable probability' is a probability 'sufficient to undermine confidence in the outcome.'" DiSimone v. Phillips, 461 F.3d 181, 196 (2d Cir. 2006) (quoting United States v. Madori, 419 F.3d 159, 169 (2d Cir. 2005)). The relevant question "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Id. (quoting Kyles, at 434).

Petitioner argues that his conviction should be vacated or that he should be granted a new trial because the District Attorney failed to disclose the problems with the FEB at the time of trial. Petitioner contends that this evidence would have undermined the test results Petitioner and his counsel received prior to trial and would have prevented Respondent from being able to "corroborate[] that petitioner sold an actual narcotic, which was an element [] of the crime and therefore was material to the respondent's case." (Pet.'s Supp. Mem. 19.) Petitioner made substantially the same argument in his second motion to vacate. Justice Ayres rejected this argument because the retest by NMS confirmed that the substances possessed were cocaine and, therefore, Petitioner did not establish a reasonable probability that had he possessed information about the FEB at trial, the verdict would have been more favorable to him.[6]

---

[6] In his habeas petition, Petitioner relies on the discrepancies between the description at trial of the substances tested versus the description in the NMS Retest reports in arguing that he has a viable Brady claim. (Pet.'s Supp. Reply 19-20.) To the extent that Petitioner's Brady claim relies on such discrepancies, his Brady claim may be unexhausted or procedurally barred. In asserting a Brady claim in his second motion to vacate, Petitioner did not rely on these testing discrepancies. Although Petitioner did rely on these discrepancies in his third motion to vacate, that motion did not clearly assert a Brady claim. To the extent that Petitioner's third motion to vacate can be construed as raising a Brady claim premised on the testing discrepancies, habeas review of such a claim would be procedurally barred because the state court found that all of the claims in Petitioner's third motion to vacate were procedurally barred. (See discussion

Here, the state court's rejection of Petitioner's <u>Brady</u> claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. <u>See</u> 28 § U.S.C. 2254(d). As explained below, there is not a reasonable probability that a different verdict would have resulted from disclosure of the impeachment evidence about the FEB. Petitioner's <u>Brady</u> claim ultimately fails because the drugs were re-tested and confirmed to be cocaine, the evidence of Petitioner's guilt at trial was overwhelming, and the undisclosed evidence had little, if any, impeachment value to critical issues in his case.

A number of courts faced with <u>Brady</u> claims that involve similar allegations about deficient crime labs have rejected those claims and, in doing so, have considered the re-tests performed on the samples at issue in analyzing <u>Brady</u>'s materiality prong. <u>See Shahzad v. County of Nassau et al.</u>, No. 13-CV-2268 (E.D.N.Y March 31, 2016) (granting summary judgment in favor of defendants where plaintiff alleged a <u>Brady</u> claim under § 1983 based on, <u>inter alia</u>, the prosecution's failure to disclose evidence about the problems at the FEB at his trial for possession of cocaine, marijuana and oxycodone); <u>People v McCants</u>, 938 N.Y.S.2d 229 (N.Y. Sup. Ct. 2011) (unreported disposition) (denying motion to vacate conviction where FEB tested drugs because, <u>inter alia</u>, independent testing confirmed results); <u>McCants v. Hallenback</u>, No. 13-CV-5587, 2014 WL 4638836, at *1 (E.D.N.Y. Sept. 16, 2014) (denying McCants's habeas petition challenging state court's denial of motion to vacate); <u>United States v. Brown</u>, No. 08-10050, 2015 WL 1268159, at *4 (D. Mass. Mar. 19, 2015) (rejecting <u>Brady</u> claim in motion to vacate conviction where lab chemist engaged in egregious misconduct because, among other things, "if the

---

<u>infra</u>, p. 24.) To the extent that Petitioner never raised a <u>Brady</u> claim premised on the testing discrepancies in state court, such a claim may be unexhausted. In any event, such a <u>Brady</u> claim is meritless for the reasons stated herein.

misconduct had been discovered before trial, the most probable outcome would have been retesting by another, presumably trustworthy agency").

Here, Petitioner asserts that he can establish materiality because, according to Petitioner, the evidence about the FEB's deficiencies—when considered in light of the discrepancies between the description of the drugs in the trial testimony and the description of the drugs tested by NMS— would allow him to effectively impeach the chain of custody. This argument is not persuasive and is certainly insufficient to show that the state court's rulings were contrary to or an unreasonable application of clearly established Supreme Court precedent, or were based on an unreasonable determination of the facts.

The "discrepancies" that Petitioner cites are based on the fact that police testimony at his trial described the three samples as white powder whereas the NMS Retest Reports describe the three samples as "white solid material," "yellow solid material," and "off-white solid material," respectively. (Pet.'s Reply 16-17.) However, the alleged inconsistency between "powder" and "solid material" is resolved by the affidavit of Victoria Davis, a Forensic Chemistry Supervisor at NMS Labs, which explains that:

> [t]o maintain consistency, NMS only uses four general terms to describe materials: solid, liquid, botanical material, and tablet. Powdered materials are referred to as solid material pursuant to NMS terminology.

(Davis Aff. ¶ 4, Attached as Ex. B to Resp.'s Opp. to Pet.'s Third 440.10 Mot., ECF No. 27-37.) The alleged inconsistency involving the color of the samples is also resolved by Davis's affidavit, which states:

> NMS testing procedures do not involve comparing the material being analyzed to a color chart. Consequently, the color description of the material being analyzed on NMS's report is subjective and may vary depending upon the perception of individual chemists conducting the analysis. A substance with an off-white hue could be described as being white, off-white, or yellow depending on the chemist

performing the analysis. In addition, it is possible for the appearance of the controlled substance to change over time.

(Id. ¶¶ 5-6.) Additionally, whatever minor color discrepancies may exist between the testimony at trial and the NMS Retest Reports is overshadowed by the fact that, for each of the three samples, both the FEB and NMS Retest Reports are consistent concerning the weight of each sample. (See note 1 and p. 6, supra.) That evidence undermines petitioner's chain of custody arguments and suggestion that, somehow, the samples tested by NMS were not the same samples introduced at trial.[7] The Court further notes that Petitioner does not address the fact that for one of the three samples, there is no color discrepancy at all given that the substance introduced at trial and the substance retested by NMS were both identified as "white." There are also no discrepancies between the physical descriptions of the metal spoons recovered from Petitioner's apartment, which the retest confirmed contained cocaine residue.

Moreover, evidence of Petitioner's guilt at trial was overwhelming. See United States v. Gil, 297 F.3d 93, 103 (2d Cir. 2002) ("Where the evidence against the defendant is ample or overwhelming, the withheld *Brady* material is less likely to be material than if the evidence of guilt is thin."); Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001) ("when a conviction is supported by overwhelming evidence of guilt, habeas relief is not warranted"); Delston v. New York, No. 07-CV-4373, 2010 WL 3004591, at *12 (E.D.N.Y. July 29, 2010) (denying motion to vacate conviction where testimony and a video showed Petitioner engaging in a transaction with an informant after which the informant immediately returned to the police with drugs); Shahzad v. County of Nassau et al., No. 13-CV-2268, slip op. at 32 (E.D.N.Y March 31, 2016) (denying Brady claim based on problems at the FEB and certain inconsistencies concerning the packaging and

---

[7] The Court notes that the NMS reports record the weight of each substance as being slightly less than that recorded by the FEB, which makes sense given that a small amount is invariably consumed during testing.

color of the drug samples at issue where, inter alia, plaintiff admitted to the arresting officers that the substance was cocaine).  Here, at trial, two different informants, one of whom had known Petitioner for over twenty years, testified that they approached Petitioner and asked to buy cocaine and subsequently purchased what they believed to be cocaine while wearing hidden recording devices.  Two detectives testified that they monitored these transactions via the recording devices from a nearby location, and immediately afterwards, recovered from each informant the substance purchased from Petitioner, which was later tested and confirmed to be cocaine.  Furthermore, the videos depicting the transactions between Petitioner and the informants were shown to the jury.

Finally, considering the retests and the evidence presented at trial, the various problems identified at the FEB would have only negligible, if any, impeachment value to the question of whether the drugs tested by the FEB and NMS were the same substances that Petitioner sold to the informants.

In light of the above, there was not a reasonable probability that a different verdict would have resulted from the undisclosed evidence about the FEB and the retests.  The state court's rejection of Petitioner's Brady claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts

   *ii. Actual Innocence Claim*

Petitioner also argues that the alleged discrepancies in the physical description of the substances tested by the FEB and NMS Labs, which he characterizes as "newly discovered evidence," demonstrates Petitioner's actual innocence.  (See Pet. ¶ 16(L).)  Petitioner made this same argument in his third motion to vacate, which Justice Sullivan denied in part, on the grounds that the motion was procedurally barred as Petitioner should have raised this argument in his earlier

§ 440 motion.  (See Order Denying Pet.'s Third 440.10 Mot. at 1.)  Accordingly, Petitioner's claim of actual innocence is procedurally barred.  See Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007) (holding that Section 440.10(3)(c) may operate as an independent and adequate state procedural bar); Collins v. Superintendent Conway, No. 04-CV-4672, 2006 WL 1114053, at *3 (S.D.N.Y. Apr. 26, 2006) (same).

Contrary to Petitioner's suggestion, he cannot show the cause and prejudice necessary to excuse the procedural bar.  To the extent Petitioner argues that his attorney could not have raised this argument in his second § 440 motion because he had not received all of the NMS Retest Reports at the time he filed his initial motion, this argument fails.  After receiving these reports, Petitioner filed a reply in his second §440 proceeding, and, thus, had an opportunity to raise any relevant arguments about these three NMS Retest Reports.  Petitioner has not offered any persuasive reason why he failed to raise all relevant arguments about these retests in his second § 440 motion and, instead, waited until his third § 440 motion to raise his arguments about the discrepancies in the retests.  Because the state court found this claim to be procedurally barred, this claim is also procedurally barred for purposes of federal habeas review.  In any event, Petitioner's actual innocence claim fails on the merits and must be dismissed.

As an initial matter, it is unclear whether a stand-alone claim of actual innocence may be asserted in a habeas motion.  See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo,* that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.")  However, assuming for the sake of argument, that such a right does exist, Petitioner certainly fails to meet the high standard that would be required.  Respondent correctly notes that

the standard for a stand-alone claim of actual innocence would invariably be a higher one than the already onerous standard for showing "gateway" actual innocence to save an otherwise time-barred claim pronounced in Schlup v. Delo, 513 U.S. 298 (1995).  Schlup and its progeny require that Petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  House v. Bell, 547 U.S. 518, 536–37 (2006) (quoting Schlup, at 327); Rivas, 687 F.3d at 41 ("[T]he petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.") (citation and internal quotation marks omitted).

Petitioner's actual innocence claim fails as the Schlup standard is undoubtedly higher than the materiality standard for Brady claims, and the Court has already concluded that Petitioner's Brady claim is not viable.  (See Part 2(i), infra.)  Moreover, as explained above, the Schlup standard is less burdensome than would be required for a stand-alone claim of actual innocence.  Thus, it is clear that Petitioner's claim of actual innocence fails.[8]

    iii.    *Petitioner's Request for a Hearing*

As part of Petitioner's actual innocence claim, he requests an evidentiary hearing.  (Pet.'s Supp. Reply 33.)  Petitioner argues that the problems with the FEB coupled with the alleged

---

[8] The Court notes that in all of Petitioner's extensive filings, he never once states that he is actually innocent of the crimes of which he was convicted.  Instead, he is careful to craft his argument in terms of the alleged lack of proof against him in light of the alleged "new evidence" he seeks to introduce.  Although Petitioner may not be required to submit an affidavit affirmatively stating that he is innocent, this glaring omission is notable.  See Woodward v. Grandlienard, No. 15-CV-545, 2015 WL 3539058 (D. Minn. June 4, 2015) ("Woodward does not even *allege* in his habeas petition that the substances tested at the St. Paul crime lab were not methamphetamines.  Instead, Woodward merely claims that the St. Paul crime lab has made mistakes in the past, and that the lab report in his case was therefore insufficiently reliable for the jury to conclude that the substances were truly methamphetamines.  But the St. Paul crime lab's previous errors in other cases, even if proved, would not show that Woodward was actually innocent of the crimes for which he was convicted.").

discrepancies in physical descriptions of the substances tested create unresolved questions of fact regarding the chain of custody and that a hearing is necessary to further develop the record. (Id. at 33-34.)

However, Petitioner's request for an evidentiary hearing to either introduce or develop new evidence is precluded by § 2254 and Cullen v. Pinholster, 563 U.S. 170 (2011). A district court has no discretion to hold an evidentiary hearing where that claim was adjudicated on the merits in state court. See Cummings v. Lee, No. 09-CV-4331, 2013 WL 5744465, at *9 (E.D.N.Y. Oct. 23, 2013) ("[T]he district court may not rely upon new evidence produced at an evidentiary hearing to determine habeas relief, and must instead limits its review to 'the record that was before the state court that adjudicated the claim on the merits.'") (quoting Cullen, 563 U.S. at 182); Cullen, 563 U.S. at 185 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

Here, Petitioner advanced an identical claim concerning the alleged discrepancies in the physical descriptions of the substances tested in his third motion to vacate. That motion was denied in all respects on the grounds that it was procedurally barred and because the claim was "meritless and not supported by any evidence." (See Order Denying Pet.'s Third 440.10 Mot. at 1.) Thus, Petitioner is precluded from seeking an evidentiary hearing regarding this claim.

Finally, even if the Court had discretion to hold a hearing, it would be inappropriate to introduce or develop new evidence because "even with the benefit of an evidentiary hearing, [Petitioner] could not develop a factual record that would entitle him to habeas relief." Schriro v. Landrigan, 550 U.S. 465, 475 (2007); Momplaisir v. Capra, 718 F. App'x 91, 92 (2d Cir. 2018)

("In order for a petitioner to establish an entitlement to an evidentiary hearing, he must show that his allegations, taken as true, would entitle him to federal habeas corpus relief.")

Petitioner also claims that an evidentiary is necessary because there are unresolved questions of fact regarding the chain of custody for the substances retested by NMS Labs. (Pet.'s Supp. Reply 33-34.) However, based on the current record, there are no issues of material fact in dispute such that a hearing is warranted. Two confidential informants testified at Petitioner's trial that they approached Petitioner and asked to buy cocaine and subsequently purchased what they believed to be cocaine. The substances recovered from the confidential informants were tested by the FEB and confirmed to be cocaine, and then were retested by NMS Labs and, again, confirmed to be cocaine. Petitioner's claims based on the alleged discrepancies in physical appearance between the substances recovered from the informants and the substances retested at trial are wholly incredible as explained above. In light of the "overwhelming evidence of the [Petitioner]'s guilt," see People v. Holley, 929 N.Y.S.2d 747 (N.Y. App. Div. 2d Dep't 2011), a hearing is not warranted. See Schriro, at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

### III.        CONCLUSION

The Court has considered all of Petitioner's arguments and finds them to be either time-barred, procedurally barred, or meritless. Accordingly, the petition is DENIED, and Petitioner's request for an evidentiary hearing is DENIED. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. Coppedge v.

<u>United States</u>, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to

serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

Dated:  August 1, 2018
         Central Islip, New York

                                    _____/s/  (JMA)_____
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE